FILED
2017 May-08  AM 09:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JOHN SMITH, | ) | |
|     Plaintiff, | ) | CIVIL ACTION NO. |
| v. | ) | |
| IMI HUNTSVILLE, LLC, and | ) | |
| BAYER PROPERTIES, LLC | ) | _____ |
|     Defendants. | ) | |
| | ) | |

## COMPLAINT

## I.    INTRODUCTION

Plaintiff, John  Smith, files this Title III, ADA action, pursuant to 42 U.S.C. §12181, et. seq. In Count One of the Complaint, Plaintiff seeks to enjoin the Defendants to remove architectural barriers. In Count Two, Plaintiff seeks to enjoin Defendants to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three, Plaintiff seeks to enjoin the Defendants' use of the premises to provide full and equal enjoyment of the premises to the disabled. Counts Two and Three seek independent relief in addition to the removal of architectural barriers. Count Four seeks to enjoin Defendants' failure to

design and construct the facilities to be readily accessible to and usable by individuals with disabilities.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.  Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA") and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.  Venue is proper in this Court, the United States District Court for the Northern District of Alabama, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Northern District of Alabama.

3.  Plaintiff, John Smith, was diagnosed with diabetes forty-one years ago. As a result of his diabetes, Mr. Smith consequently had a double amputation, losing both of his legs. Mr. Smith uses a wheelchair for mobility as a result of these amputations. The extent of Mr. Smith's physical problems limits his ability to care for himself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant

to 42 U.S.C. § 12102 (2) (A). Mr. Smith is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; See also, 28 C.F.R. § 36.104.

4. Defendant, IMI Huntsville, LLC, (hereinafter "IMI Huntsville") is conducting business within the State of Alabama sufficient to create both general and specific <u>in personam</u> jurisdiction. Upon information and belief from the property records on the Madison County GIS Internet Report, IMI Huntsville, "owns" the real property and its improvements located at 365 The Bridge St., Huntsville, AL 35806. The shopping mall is a place of public accommodation pursuant to 42 U.S.C. § 12181(7). The Bridge Street Town Centre is a commercial facility in that the unit is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)(A). Moreover, the shopping mall provides an outdoor fashion center for consumers to shop, dine, stay, and enjoy the dynamic mix of national retailers and specialty stores as well

as a strong variety of restaurants to the public, which qualifies Bridge Street as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

5. Defendant, Bayer Properties, LLC, (hereinafter "Bridge Street Town Centre"), is a Limited Liability Company that is both registered to conduct business and is conducting business within the State of Alabama sufficient to create both general and specific in personam jurisdiction. Upon information and belief, Bayer Properties, LLC operates the shopping mall located at 365 The Bridge St., Huntsville, AL 35806, more commonly known as Bridge Street Town Centre. 42 U.S.C. § 12182. The Bridge Street Town Centre is a place of public accommodation pursuant to 42 U.S.C. § 12181(7). The Bridge Street Town Centre is a commercial facility in that the unit is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)(A). Moreover, the shopping mall provides an outdoor fashion center for consumers to shop, dine, stay, and enjoy the dynamic mix of national retailers and specialty stores as well as a strong variety of restaurants to the public, which qualifies

Bridge Street as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

**6.** All events giving rise to this lawsuit occurred in the Northern District of Alabama and the Defendants is a citizen thereof.

**7.** Plaintiff John Smith, is a resident of Muscle Shoals, Alabama. He goes to Huntsville frequently because there is more of a variety of stores, restaurants and activities for he and his wife in Huntsville. Mr. Smith enjoys shopping at the Bridge Street Town Centre, which is the subject of this action, whenever he is in Huntsville. More specifically, Mr. Smith likes to shop at Bridge Street Town Centre not only because he enjoys the variety of upscale shops and full-service restaurants, but also because of the beautiful peaceful five-acre lake that's home to ducks, turtles and a variety of freshwater fish species, which he can enjoy with his wife on the half-mile walking trial provided. In addition to his shopping, Mr. Smith enjoys viewing the award winning professionally landscaped grounds, which features nearly 40 different species of trees, shrubs, perennials and annuals that are on colorful display. Mr. Smith intends to

continue to go to Bridge Street Town Centre when he travels to Huntsville. Mr. Smith does not know exactly when he will go back to Bridge Street Town Centre while on his next trip in Huntsville, because he has not planned out every shopping trip for the rest of his life. Such specific planning is not necessary to invoke the ADA.  See, e.g. *Parr v.  L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc*. No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*".). Mr. Smith definitely intends to return to Bridge Street Town Centre, however not only to shop, but also to see if Bridge Street Town Centre does the repairs to become ADA compliant. Even after the repairs are eventually completed, Mr. Smith will continue to visit Bridge Street Town Centre when he is in Huntsville, because it really has a beautiful atmosphere and is good place to shop, in his opinion.

**8.** Because of the barriers described below in paragraph 20 and throughout the Complaint, Plaintiff has been denied full and equal enjoyment of the Defendants' premises on the basis of his disabilities.

**9.** Plaintiff accordingly, has standing to pursue this case because (1) he is disabled, pursuant to the statutory and regulatory definition; (2) the Defendants' shopping mall is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) he has been denied full and equal enjoyment of the Defendants' premises on the basis of his disabilities. As described more fully in paragraph 18, there exists a genuine threat of imminent future injury.

## II.   PLAINTIFF'S CLAIMS

<u>ADA, Title III</u>

**10.** On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 <u>et.seq</u>. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was

January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

11. Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendants' establishment is a place of public accommodation in that it provides an outdoor fashion center to shop, dine, stay, and enjoy the dynamic mix of national retailers and specialty stores as well as a strong variety of restaurants to the public. Accordingly, it is covered by the ADA and must comply with the Act.

## COUNT ONE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(iv)
### *(Architectural Barriers)*

**Defendants' Existing Facility Is Subject to the 2010 ADA Design Standards for the Portions of the Facility Addressed in this Complaint**

12. Plaintiff is informed and believes based on publicly available information that Bridge Street Town Centre was originally constructed in 2007. Upon further information and belief, Bridge Street Town Centre underwent improvements in 2014 that consisted of a 220,000-square foot expansion with additions, alterations and/or improvements thereafter.

13. The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402.

"Readily accessible to and usable by. . ." is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

14. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or

the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§

36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable.* See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

15. For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

## Plaintiff's Particularized Standing to Pursue an Injunction

16. The Defendants have discriminated, and continues to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal

enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Bridge Street Town Centre in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq. As "new construction", the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) and (b).  Defendants' failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

17. As described above, prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendants' facility. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the facility in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

18. Plaintiff has definite plans to return to Bridge Street Town

Centre in the future, as described in paragraph 7. Plaintiff will return to Bridge Street Town Centre within the next few months not only to shop, but also to see if Bridge Street Town Centre has repaired the barriers, and changed its practices and procedures. Plaintiff will continue to do so. Even when Bridge Street Town Centre is repaired, Plaintiff will continue to shop there, as he has in past visits to Huntsville. Absent remedial action by Defendants, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendants on the basis of his disabilities. The Eleventh Circuit held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied "*there is a 100% likelihood that plaintiff… will suffer the alleged injury again when he returns to the store.*" Due to the definiteness of Plaintiff's future plans to continue visiting the subject facility, there exists a genuine threat of imminent future injury.

## Architectural Barriers

19.  Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

20.  Plaintiff has been throughout the parking lots at Bridge Street Town Centre and from the parking lots to and throughout the purported accessible routes leading towards the common area entrances, to and throughout the paths of travel, from the entrances to and throughout the common areas, from the entrances to and throughout the restrooms, the restrooms themselves; throughout circulation paths and accessible routes, and the paths of travel, all of which is more specifically described below. Defendants' facilities located at 365 The Bridge St., Huntsville, AL 35806, more commonly known as "Bridge Street Town Centre", violates the ADA in the parking lot, from the parking lot to and throughout the accessible route, restrooms, common areas, and in particular but not limited to:

a) Bridge Street Town Centre provides a parking lot near Barnes & Noble for able-bodied individuals, but fails to provide a parking lot near Barnes & Noble for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

    i. The purported ADA accessible parking spaces near Barnes & Noble fail to conform to the ADA Standards for Accessible Design;

    ii. There is not at least one ADA van accessible parking space near Barnes & Noble that has a level ground surface that is measured 132 inches wide with an adjacent access aisle 60 inches wide or, alternatively, 96 inches wide with a 96-inch-wide adjacent access aisle; purported ADA "van accessible" parking space fails to meet the minimum required width of 132 inches;

    iii. There is no ADA accessible parking space on the right side near Barnes & Noble that has a level ground surface that is measured 96 inches wide

with an adjacent access aisle that measures 60 inches wide, and connects to an accessible route to the accessible entrance and is identified with signage displaying the international symbol of accessibility mounted a minimum of 60 inches above the finish floor;

iv. There is no ADA accessible parking space on the left side near Barnes & Noble that has a level ground surface that is measured 96 inches wide with an adjacent access aisle that measures 60 inches wide, and connects to an accessible route to the accessible entrance and is identified with signage displaying the international symbol of accessibility mounted a minimum of 60 inches above the finish floor;

v. The first parking space on the left side and its non-existent adjacent access aisle fail to be properly marked so as to discourage disabled individuals from parking in them;

vi. The signage displaying the International Symbol of Accessibility indicating the parking spaces as "ADA accessible" fails to meet the minimum required height of 60 inches above the finished floor;

vii. The signage displaying the International Symbol of Accessibility indicating the parking spaces as "van accessible" fails to meet the minimum required height of 60 inches above the finished floor;

viii. Bridge Street Town Centre fails to maintain the accessible features of the parking lot near Barnes & Noble that are required to be readily accessible to and usable by individuals with disabilities;

## PARKING NEAR BARNES & NOBLE

b) Bridge Street Town Centre provides an accessible route from the parking lot near Barnes & Noble for able-bodied individuals, but fails to provide an ADA accessible route for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

       **i.** There is no ADA accessible route that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not limited to the walking surfaces, curb ramps, ramp landings, doors, and any other element that is required to be readily accessible to and usable by individuals with disabilities;

       **ii.** There is no ADA accessible route leading from the parking lot to the entrance;

       **iii.** Bridge Street Town Centre fails to maintain the accessible features of the accessible route near Barnes & Noble that are required to be readily accessible to and usable by individuals with disabilities;

## PARKING NEAR P.F. CHANGS, OLD NAVY, & ULTA

       **c)** Bridge Street Town Centre provides a parking lot across from P.F. Chang's, Old Navy, and Ulta for able-bodied individuals, but fails to provide an ADA accessible parking

lot for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

i. The parking spaces fail to conform to the ADA Standards for Accessible Design;

ii. There is not at least one ADA van accessible parking space that has a level ground surface that is measured 132 inches wide with an adjacent access aisle 60 inches wide or, alternatively, 96 inches wide with a 96-inch-wide adjacent access aisle; purported ADA "van accessible" parking space fails to meet the minimum required width of 132 inches;

iii. There is no ADA accessible parking space across from P.F. Chang's, Old Navy and Ulta that has a level ground surface that is measured 96 inches wide with an adjacent access aisle that measures 60 inches wide, and connects to an accessible route to the accessible entrance and is identified with signage displaying the international symbol of

accessibility mounted a minimum of 60 inches above the finish floor;

iv. The signage displaying the International Symbol of Accessibility indicating the parking spaces as "ADA accessible" fails to meet the minimum required height of 60 inches above the finished floor;

v. The signage displaying the International Symbol of Accessibility indicating the parking spaces as "van accessible" fails to meet the minimum required height of 60 inches above the finished floor;

vi. The first purported ADA accessible parking space from the left and its non-existent adjacent access aisle fail to be properly marked and/or maintained;

vii. Bridge Street Town Centre fails to have and otherwise fails to evenly disburse the van accessible parking spaces throughout the parking areas;

     **viii.** Bridge Street Town Centre fails to maintain the accessible features of the parking area that are required to be readily accessible to and usable by individuals with disabilities;

**d)** Bridge Street Town Centre provides an accessible route from the parking lot across from P.F. Chang's, Old Navy, and Ulta to the entrance of the stores for able-bodied individuals, but fails to provide an ADA accessible route for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

     **i.** There is no ADA accessible route that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not limited to the walking surfaces, curb ramps, ramp landings, doors, and any other element that is required to be readily accessible to and usable by individuals with disabilities;

     **ii.** There is no ADA accessible route leading from the parking lot to the entrance;

      **iii.** Bridge Street Town Centre fails to maintain the accessible route to the entrances of the stores so that it is readily accessible to and usable by individuals with disabilities;

e) Bridge Street Town Centre provides a parking lot near Dick's Sporting Goods for able-bodied individuals, but fails to provide an ADA accessible parking area for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

      **i.** The parking spaces fail to conform to the ADA Standards for Accessible Design;

      **ii.** There is not at least one ADA van accessible parking space that has a level ground surface that is measured 132 inches wide with an adjacent access aisle 60 inches wide or, alternatively, 96 inches wide with a 96-inch-wide adjacent access aisle; purported ADA "van accessible" parking space fails to meet the minimum required width of 132 inches;

iii. There is no ADA accessible parking space that has a level ground surface that is measured 96 inches wide with an adjacent access aisle that measures 60 inches wide, and connects to an accessible route to the accessible entrance and is identified with signage displaying the international symbol of accessibility mounted a minimum of 60 inches above the finish floor;

iv. The purported accessible parking spaces fail to provide ADA accessible signage that meets the minimum required height of 60 inches above the finished floor;

v. The purported ADA "van accessible" parking spaces fail to provide ADA accessible signage that meets the minimum required height of 60 inches above the finished floor;

vi. Bridge Street Town Centre fails to have and otherwise fails to evenly disburse the van

accessible parking spaces throughout the parking
areas;

    **vii.** Bridge Street Town Centre fails to maintain the
accessible features of the parking lot that are
required to be readily accessible to and usable by
individuals with disabilities;

f) Bridge Street Town Centre provides an accessible route
from the parking lot near Dick's Sporting Goods to the
entrance for able-bodied individuals, but fails to provide an
ADA accessible route for non-able-bodied individuals, which
includes but is not limited to the following failures of
Defendants:

    **i.** There is no ADA accessible route that conforms to
the standards for accessible design in all of the
elements that are required to be accessible which
includes but is not limited to the walking surfaces,
curb ramps, ramp landings, doors, and any other
element that is required to be readily accessible to
and usable by individuals with disabilities;

## PARKING NEAR DICK'S SPORTING GOODS

      **ii.** There is no ADA accessible route leading from the parking lot to the entrance;

      **iii.** Bridge Street Town Centre fails to maintain the accessible route to the entrance of Dick's Sporting Goods so that it is readily accessible to and usable by individuals with disabilities;

## PARKING NEAR BED BATH & BEYOND

**g)** Bridge Street Town Centre provides a parking area near Bed Bath & Beyond for able-bodied individuals, but fails to provide an ADA accessible parking area for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

      **i.** The parking spaces fail to conform to the ADA Standards for Accessible Design;

      **ii.** There is not at least one ADA van accessible parking space that has a level ground surface that is measured 132 inches wide with an adjacent

access aisle 60 inches wide or, alternatively, 96 inches wide with a 96-inch-wide adjacent access aisle; purported ADA "van accessible" parking space fails to meet the minimum required width of 132 inches;

iii. The purported ADA accessible parking spaces closest to the entrance of the store fail to have a level ground surface that is measured 96 inches wide with an adjacent access aisle that measures 60 inches wide, and connects to an accessible route to the accessible entrance and is identified with signage displaying the international symbol of accessibility mounted a minimum of 60 inches above the finish floor;

iv. The purported accessible parking spaces fail to provide ADA accessible signage that meets the minimum required height of 60 inches above the finished floor;

v. Bridge Street Town Centre fails to maintain the accessible features of the parking area that are required to be readily accessible to and usable by individuals with disabilities;

vi. The purported ADA "van accessible" parking spaces fail to provide ADA accessible signage that meets the minimum required height of 60 inches above the finished floor;

vii. The purported ADA accessible parking spaces and their non-existent adjacent access aisles fail to be properly marked and/or maintained;

viii. Bridge Street Town Centre fails to have and otherwise fails to evenly disburse the van accessible parking spaces throughout the parking areas;

ix. Bridge Street Town Centre fails to maintain the accessible features of the parking lot that are required to be readily accessible to and usable by individuals with disabilities;

h) Bridge Street Town Centre provides an accessible route from the parking area near Bed Bath & Beyond to the entrance for able-bodied individuals, but fails to provide an ADA accessible route for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

   i. There is no ADA accessible route that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not limited to the walking surfaces, curb ramps, ramp landings, doors, and any other element that is required to be readily accessible to and usable by individuals with disabilities;

   ii. There is no ADA accessible route leading from the parking lot to the entrance;

   iii. Bridge Street Town Centre fails to maintain the accessible route to the entrance of Bed Bath & Beyond so that it is readily accessible to and usable by individuals with disabilities;

## PARKING NEAR TOYS R US

    i) Bridge Street Town Centre provides a parking area for able-bodied individuals, but fails to provide an ADA accessible parking area for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

        i. The current practice at this facility is to locate a trash can within the ADA accessible parking spaces adjacent access aisle;

        ii. Bridge Street Town Centre fails to maintain the accessible features of the parking area that are required to be readily accessible to and usable by individuals with disabilities;

## PARKING NEAR BJ'S BREWHOUSE AND CUCINA ITALIAN

        iii. The parking spaces fail to conform to the ADA Standards for Accessible Design;

        iv. There is not at least one ADA van accessible parking space that has a level ground surface that

is measured 132 inches wide with an adjacent access aisle 60 inches wide or, alternatively, 96 inches wide with a 96-inch-wide adjacent access aisle; purported ADA "van accessible" parking space fails to meet the minimum required width of 132 inches;

v. The purported ADA parking spaces and their adjacent access aisles fail to be properly marked and/or maintained;

j) Bridge Street Town Centre provides an accessible route from the parking area near BJs Brewhouse and Cucina Italian to the entrance for able-bodied individuals, but fails to provide an ADA accessible route for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

i. There is no ADA accessible route that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not limited to the walking surfaces,

curb ramps, ramp landings, doors, and any other element that is required to be readily accessible to and usable by individuals with disabilities;

ii. The curb ramp on the purported accessible route from the non-compliant ADA parking spaces towards the entrance has a running slope that exceeds the required slope of 1:12;

iii. The curb ramp's left side flare on the purported accessible route from the non-accessible site arrival point towards the entrance has a ramp flare that exceeds the required slope of 1:10;

iv. The curb ramp's right side flare on the purported accessible route from the non-accessible site arrival point towards the entrance has a ramp flare that exceeds the required slope of 1:10;

v. There is no site arrival point serving BJs Brewhouse and Cucina Italian that conforms to the ADA Standards for Accessible Design;

      **vi.** There is no ADA accessible route leading from the parking lot to the entrance;

      **vii.** Bridge Street Town Centre fails to maintain the accessible route so that it is readily accessible to and usable by individuals with disabilities;

**k)** Bridge Street Town Centre provides a parking area near Belk for able-bodied individuals, but fails to provide an ADA accessible parking area for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

      **i.** The parking spaces fail to conform to the ADA Standards for Accessible Design;

      **ii.** There is not at least one ADA van accessible parking space that has a level ground surface that is measured 132 inches wide with an adjacent access aisle 60 inches wide or, alternatively, 96 inches wide with a 96-inch-wide adjacent access aisle; purported ADA "van accessible" parking

space fails to meet the minimum required width of 132 inches;

iii. The purported ADA accessible parking spaces fail to have a level ground surface that is measured 96 inches wide with an adjacent access aisle that measures 60 inches wide, and connects to an accessible route to the accessible entrance and is identified with signage displaying the international symbol of accessibility mounted a minimum of 60 inches above the finish floor;

iv. The parking spaces and their non-existing adjacent access aisles fail to be properly marked so as to be discouraged from parking in them;

v. Bridge Street Town Centre fails to have and otherwise fails to evenly disburse the accessible parking spaces throughout the parking area;

vi. There are no ADA accessible parking spaces located at the shortest accessible route to the entrance;

    **vii.** There are no ADA "van accessible" parking spaces located at the shortest accessible route to the entrance;

    **viii.** The signage displaying the International Symbol of Accessibility indicating the parking spaces as "van accessible" fails to meet the minimum required height of 60 inches above the finished floor;

    **ix.** Bridge Street Town Centre fails to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

l) Bridge Street Town Centre provides an accessible route from the parking lot for able-bodied individuals, but fails to provide an ADA accessible route for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

    **i.** There is no ADA accessible route that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not limited to the walking surfaces,

curb ramps, ramp landings, doors, and any other element that is required to be readily accessible to and usable by individuals with disabilities;

ii. The curb ramp on the purported accessible route from the non-compliant ADA parking spaces towards the entrance has a running slope that exceeds the required slope of 1:12;

iii. The curb ramp's left side flare on the purported accessible route from the non-accessible site arrival point towards the entrance has a ramp flare that exceeds the required slope of 1:10;

iv. The curb ramp's right side flare on the purported accessible route from the non-accessible site arrival point towards the entrance has a ramp flare that exceeds the required slope of 1:10;

v. The curb ramp landing on the purported accessible route from the non-accessible site arrival point towards the entrance has a slope that fails to be level;

vi. There is no site arrival point serving Belk that conforms to the ADA Standards for Accessible Design;

vii. The curb ramp on the purported accessible route from the non-compliant ADA parking spaces towards the entrance has a cross slope that exceeds the required slope of 1:48;

viii. There is no ADA accessible route leading from the parking lot to the entrance;

ix. Bridge Street Town Centre fails to maintain the accessible route to the entrance so that it is readily accessible to and usable by individuals with disabilities;

x. The parking spaces fail to conform to the ADA standards for accessible design;

xi. The second purported ADA accessible parking space from the left fails to have a level ground surface that is measured 96 inches wide with an

adjacent access aisle that measures 60 inches wide, and connects to an accessible route to the accessible entrance and is identified with signage displaying the international symbol of accessibility mounted a minimum of 60 inches above the finish floor;

xii.  The third purported ADA accessible parking space from the left fails to have a level ground surface that is measured 96 inches wide with an adjacent access aisle that measures 60 inches wide, and connects to an accessible route to the accessible entrance and is identified with signage displaying the international symbol of accessibility mounted a minimum of 60 inches above the finish floor;

xiii.  The fourth purported ADA accessible parking space from the left fails to have a level ground surface that is measured 96 inches wide with an adjacent access aisle that measures 60 inches wide, and connects to an accessible route to the accessible entrance and is identified with signage displaying

the international symbol of accessibility mounted a minimum of 60 inches above the finish floor;

**xiv.** Bridge Street Town Centre fails to maintain the accessible features of the parking area that are required to be readily accessible to and usable by individuals with disabilities;

## PARKING NEAR BELK

**m)** Bridge Street Town Centre provides a parking area for able-bodied individuals, but fails to provide an ADA accessible parking area for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

**n)** Bridge Street Town Centre provides an accessible route from the parking lot for able-bodied individuals, but fails to provide an ADA accessible route for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

i. There is no ADA accessible route that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not limited to the walking surfaces, curb ramps, ramp landings, doors, and any other element that is required to be readily accessible to and usable by individuals with disabilities;

ii. The curb ramp on the purported accessible route from the non-compliant ADA parking spaces towards the entrance has a running slope that exceeds the required slope of 1:12;

iii. accessible parking spaces located at the shortest accessible route to the entrance;

iv. Bridge Street Town Centre fails to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

v. The curb ramp landing on the purported accessible route from the non-accessible site arrival point

towards the entrance has a slope that fails to be level;

vi. There is no site arrival point serving Red Robin that conforms to the ADA Standards for Accessible Design;

vii. There is no ADA accessible route leading from the parking lot to the entrance;

viii. Bridge Street Town Centre fails to maintain the accessible route to the entrance so that it is readily accessible to and usable by individuals with disabilities;

## PARKING NEAR RED ROBIN

o) Bridge Street Town Centre provides a parking area for able-bodied individuals, but fails to provide an ADA accessible parking area for non-able-bodied individuals, including but not limited to the following elements:

i. Bridge Street Town Centre fails to maintain the accessible features of the parking area that are

required to be readily accessible to and usable by individuals with disabilities;

## PARKING NEAR THE WESTIN

p) Bridge Street Town Centre provides a parking area for able-bodied individuals, but fails to provide an ADA accessible parking area for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

> i. The signage displaying the International Symbol of Accessibility indicating the parking spaces as "ADA accessible" fails to meet the minimum required height of 60 inches above the finished floor;

> ii. The signage displaying the International Symbol of Accessibility indicating the parking spaces as ADA "van accessible" fails to meet the minimum required height of 60 inches above the finished floor;

iii. The first purported ADA "van accessible" parking space from the left fails to meet the required width of 132 inches when the adjacent access aisle is 60 inches wide, or in the alternative, 96-inch-wide parking space when the access aisle is 60 inches wide;

iv. The second purported ADA "van accessible" parking space from the left fails to meet the required width of 132 inches when the adjacent access aisle is 60 inches wide or in the alternative, 96-inch-wide parking space when the access aisle is 60 inches wide;

v. The purported ADA accessible parking spaces and their non-existent adjacent access aisles fail to be properly marked so as to discourage disabled individuals from parking in them;

q) Bridge Street Town Centre provides an accessible route from the parking lot for able-bodied individuals, but fails to provide an ADA accessible route for non-able-bodied

individuals, which includes but is not limited to the following failures of Defendants:

   i. There is no ADA accessible route that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not limited to the walking surfaces, curb ramps, ramp landings, doors, and any other element that is required to be readily accessible to and usable by individuals with disabilities;

   ii. The curb ramp on the purported accessible route from the non-compliant ADA parking spaces towards the entrance has a running slope that exceeds the required slope of 1:12;

   iii. The curb ramp's left side flare on the purported accessible route from the non-accessible site arrival point towards the entrance has a ramp flare that exceeds the required slope of 1:10;

   iv. The curb ramp's right side flare on the purported accessible route from the non-accessible site arrival

point towards the entrance has a ramp flare that exceeds the required slope of 1:10;

v. The curb ramp landing on the purported accessible route from the non-accessible site arrival point towards the entrance has a slope that fails to be level;

vi. There is no site arrival point serving the Westin that conforms to the ADA Standards for Accessible Design;

vii. The curb ramp on the purported accessible route from the non-compliant ADA parking spaces towards the entrance has a cross slope that exceeds the required slope of 1:48;

viii. There is no ADA accessible route leading from the parking lot to the entrance;

ix. Bridge Street Town Centre fails to maintain the accessible route to the entrance so that it is readily accessible to and usable by individuals with disabilities;

## PARKING IN FRONT OF THE WESTIN

**r)** Bridge Street Town Centre provides a parking area for able-bodied individuals, but fails to provide an ADA accessible parking area for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

    **i.** The first purported ADA "van accessible" parking space from the right fails to meet the required width of 132 inches when the adjacent access aisle is 60 inches wide or in the alternative, 96-inch-wide parking space when the access aisle is 60 inches wide;

    **ii.** The second purported ADA "van accessible" parking space from the right fails to meet the required width of 132 inches when the adjacent access aisle is 60 inches wide or in the alternative, 96 inch wide parking space when the access aisle is 60 inches wide;

iii. The signage displaying the International Symbol of Accessibility indicating the parking spaces as "ADA accessible" fails to meet the minimum required height of 60 inches above the finished floor;

iv. The signage displaying the International Symbol of Accessibility indicating the parking spaces as ADA "van accessible" fails to meet the minimum required height of 60 inches above the finished floor;

v. The purported ADA accessible parking spaces and their non-existent adjacent access aisles fail to be properly marked so as to discourage disabled individuals from parking in them;

vi. Bridge Street Town Centre fails to maintain the accessible features of the parking area that are required to be readily accessible to and usable by individuals with disabilities;

s) Bridge Street Town Centre provides an accessible route from the parking lot for able-bodied individuals, but fails to

provide an ADA accessible route for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

    **i.** There is no ADA accessible route that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not limited to the walking surfaces, curb ramps, ramp landings, doors, and any other element that is required to be readily accessible to and usable by individuals with disabilities;

    **ii.** The curb ramp on the purported accessible route from the non-compliant ADA parking spaces towards the entrance has a running slope that exceeds the required slope of 1:12;

    **iii.** The curb ramp's left side flare on the purported accessible route from the non-accessible site arrival point towards the entrance has a ramp flare that exceeds the required slope of 1:10;

iv. The curb ramp's right side flare on the purported accessible route from the non-accessible site arrival point towards the entrance has a ramp flare that exceeds the required slope of 1:10;

v. The curb ramp landing on the purported accessible route from the non-accessible site arrival point towards the entrance has a slope that fails to be level;

vi. There is no site arrival point serving the Westin that conforms to the ADA Standards for Accessible Design;

vii. The curb ramp on the purported accessible route from the non-compliant ADA parking spaces towards the entrance has a cross slope that exceeds the required slope of 1:48;

viii. There is no ADA accessible route leading from the parking lot to the entrance;

ix. Bridge Street Town Centre fails to maintain the accessible route to the entrance so that it is readily

accessible to and usable by individuals with disabilities;

## PARKING NEAR BELK UNDER THE PARKING DECK

t) Bridge Street Town Centre provides parking spaces in the parking structure on the left of the entrance for able-bodied individuals, but fails to provide any ADA accessible parking spaces for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

   i. The parking spaces fail to conform to the ADA Standards for Accessible Design;

   ii. The purported ADA accessible parking spaces in the parking structure on the left of the entrance fail to have a level ground surface that is measured 96 inches wide with an adjacent access aisle that measures 60 inches wide, and connects to an accessible route to the accessible entrance and is identified with signage displaying the international symbol of accessibility mounted a minimum of 60 inches above the finish floor;

iii. The purported ADA accessible parking spaces in the parking structure on the right of the entrance fail to have a level ground surface that is measured 96 inches wide with an adjacent access aisle that measures 60 inches wide, and connects to an accessible route to the accessible entrance and is identified with signage displaying the international symbol of accessibility mounted a minimum of 60 inches above the finish floor;

iv. There is not at least one ADA van accessible parking space that has a level ground surface that is measured 132 inches wide with an adjacent access aisle 60 inches wide or, alternatively, 96 inches wide with a 96-inch-wide adjacent access aisle; purported ADA "van accessible" parking space fails to meet the minimum required width of 132 inches;

v. There is no signage identifying and designating the purported "van accessible" parking spaces as ADA

accessible that is mounted 60 inches maximum above the finished floor or ground;

vi. There are no ADA accessible parking spaces in the parking structure located at the shortest accessible route to the entrance;

vii. Bridge Street Town Centre fails to have and otherwise fails to evenly disburse the ADA accessible parking spaces throughout the parking structure;

viii. Bridge Street Town Centre fails to maintain its parking spaces within its parking structure so that they are readily accessible to and usable by individuals with disabilities;

u) Bridge Street Town Centre provides an accessible route from the parking lot for able-bodied individuals, but fails to provide an ADA accessible route for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

i. There is no ADA accessible route that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not limited to the walking surfaces, curb ramps, ramp landings, doors, and any other element that is required to be readily accessible to and usable by individuals with disabilities;

ii. The curb ramp on the purported accessible route from the non-compliant ADA parking spaces towards the entrance has a running slope that exceeds the required slope of 1:12;

iii. The curb ramp's left side flare on the purported accessible route from the non-accessible site arrival point towards the entrance has a ramp flare that exceeds the required slope of 1:10;

iv. The curb ramp's right side flare on the purported accessible route from the non-accessible site arrival point towards the entrance has a ramp flare that exceeds the required slope of 1:10;

v. The curb ramp landing on the purported accessible route from the non-accessible site arrival point towards the entrance has a slope that fails to be level;

vi. There is no site arrival point that conforms to the ADA Standards for Accessible Design;

vii. The curb ramp on the purported accessible route from the non-compliant ADA parking spaces towards the entrance has a cross slope that exceeds the required slope of 1:48;

viii. There is no ADA accessible route leading from the parking lot to the entrance;

ix. Bridge Street Town Centre fails to maintain the accessible route to the entrance so that it is readily accessible to and usable by individuals with disabilities;

## SECOND LEVEL PARKING DECK NEAR BELK

v) Bridge Street Town Centre provides parking spaces in the parking structure on the left of the entrance for able-bodied

individuals, but fails to provide any ADA accessible parking spaces for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

    **i.** The parking spaces fail to conform to the ADA Standards for Accessible Design;

    **ii.** The purported ADA accessible parking spaces in the parking structure on the left of the entrance fail to have a level ground surface that is measured 96 inches wide with an adjacent access aisle that measures 60 inches wide, and connects to an accessible route to the accessible entrance and is identified with signage displaying the international symbol of accessibility mounted a minimum of 60 inches above the finish floor;

    **iii.** The signage displaying the International Symbol of Accessibility indicating the parking spaces as "ADA accessible" fails to meet the minimum required height of 60 inches above the finished floor;

iv. There is not at least one ADA "van accessible" parking space that has a level ground surface that is measured 132 inches wide with an adjacent access aisle 60 inches wide or, alternatively, 96 inches wide with a 96-inch-wide adjacent access aisle; purported ADA "van accessible" parking space fails to meet the minimum required width of 132 inches;

v. There is no signage displaying the International Symbol of Accessibility indicating the parking spaces as "van accessible" and mounted 60 inches maximum above the finished floor or ground;

vi. Bridge Street Town Centre fails to have and otherwise fails to evenly disburse the van accessible parking spaces throughout the parking structure;

w) There are no ADABridge Street Town Centre provides an accessible route from the parking lot for able-bodied individuals, but fails to provide an ADA accessible route for

non-able-bodied individuals, which includes but is not
limited to the following failures of Defendants:

    i. There is no ADA accessible route that conforms to
the standards for accessible design in all of the
elements that are required to be accessible which
includes but is not limited to the walking surfaces,
curb ramps, ramp landings, doors, and any other
element that is required to be readily accessible to
and usable by individuals with disabilities;

    ii. There is no ADA accessible route leading from the
parking lot to the entrance;

    iii. Bridge Street Town Centre fails to maintain the
accessible route to the entrance so that it is readily
accessible to and usable by individuals with
disabilities;

## PARKING ON FIRST FLOOR OF PARKING DECK NEAR BAR LOUIE

x) Bridge Street Town Centre provides parking spaces in the
parking structure for able-bodied individuals, but fails to
provide any ADA accessible parking spaces for non-able-

bodied individuals, which includes but is not limited to the following failures of Defendants:

i. The parking spaces fail to conform to the ADA Standards for Accessible Design;

ii. The purported ADA accessible parking spaces in the parking structure near Bar Louie fail to have a level ground surface that is measured 96 inches wide with an adjacent access aisle that measures 60 inches wide, and connects to an accessible route to the accessible entrance and is identified with signage displaying the international symbol of accessibility mounted a minimum of 60 inches above the finish floor;

iii. There is not at least one ADA "van accessible" parking space that has a level ground surface that is measured 132 inches wide with an adjacent access aisle 60 inches wide or, alternatively, 96 inches wide with a 96-inch-wide adjacent access aisle; purported ADA "van accessible" parking

space fails to meet the minimum required width of 132 inches;

iv. There is no signage displaying the International Symbol of Accessibility indicating the parking spaces as "van accessible" and mounted 60 inches maximum above the finished floor or ground;

v. There are no ADA "van accessible" parking spaces located at the shortest accessible route to the entrance;

vi. Bridge Street Town Centre fails to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

vii. Bridge Street Town Centre fails to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

y) Bridge Street Town Centre provides an accessible route from the parking lot for able-bodied individuals, but fails to provide an ADA accessible route for non-able-bodied

individuals, which includes but is not limited to the following failures of Defendants:

    i. There is no ADA accessible route that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not limited to the walking surfaces, curb ramps, ramp landings, doors, and any other element that is required to be readily accessible to and usable by individuals with disabilities;

    ii. There is no ADA accessible route leading from the parking lot to the entrance;

    iii. Bridge Street Town Centre fails to maintain the accessible route to the entrance so that it is readily accessible to and usable by individuals with disabilities;

## PARKING ON FIRST FLOOR OF PARKING DECK NEAR MATTRESS FIRM

    z) Bridge Street Town Centre provides parking spaces in the parking structure for able-bodied individuals, but fails to provide any ADA accessible parking spaces for non-able-

bodied individuals, which includes but is not limited to the following failures of Defendants:

    **i.** The parking spaces fail to conform to the ADA Standards for Accessible Design;

    **ii.** There is not at least one ADA "van accessible" parking space that has a level ground surface that is measured 132 inches wide with an adjacent access aisle 60 inches wide or, alternatively, 96 inches wide with a 96-inch-wide adjacent access aisle; purported ADA "van accessible" parking space fails to meet the minimum required width of 132 inches;

    **iii.** The signage displaying the International Symbol of Accessibility indicating the parking spaces as ADA "van accessible" fail to meet the minimum required height of 60 inches above the finished floor;

    **iv.** Bridge Street Town Centre fails to maintain the accessible features of the parking structure that

are required to be readily accessible to and usable by individuals with disabilities;

aa) Bridge Street Town Centre provides a route from the parking structure leading to the entrances for able-bodied individuals, but fails to provide an ADA accessible route from the parking lot to the entrances for non-able-bodied individuals, including but not limited to the following elements:

   i. There is no ADA accessible route that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not limited to the walking surfaces, curb ramps, ramp landings, doors, and any other element that is required to be readily accessible to and usable by individuals with disabilities;

   ii. There is no ADA accessible route leading from the parking lot to the entrance;

   iii. The ramp on the purported accessible route from the non-compliant ADA parking spaces towards the

entrance has a running slope that exceeds the required slope of 1:12;

iv. The ramp landing on the purported accessible route from the non-accessible site arrival point towards the entrance has a slope that fails to be level;

v. There is no site arrival point that conforms to the ADA Standards for Accessible Design;

vi. The curb ramp on the purported accessible route from the non-compliant ADA parking spaces towards the entrance has a cross slope that exceeds the required slope of 1:48;

vii. The ramp is not properly maintained to be usable by individuals with disabilities;

viii. Bridge Street Town Centre fails to maintain the accessible features of the accessible route that are required to be readily accessible to and usable by individuals with disabilities;

## MEN'S RESTROOM NEAR H&M

bb) The ADA signage identifying restroom is on the door which fails to be properly located on the latch side of the door.

cc) Bridge Street Town Centre provides a toilet compartment in the men's restroom for able-bodied individuals, but fails to provide an ADA accessible toilet compartment for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

    i. The toilet compartment door fails to be self-closing;

    ii. There are not door pulls located on both sides;

    iii. The toilet compartment door locking mechanism requires tight grasping, twisting, and/or pinching of the wrist;

    iv. The baby changing table exceeds the maximum allowed height of 48 inches;

v. The rear wall grab bar is not properly located 12 inches on the closed side of the water closet and 24 inches on the transfer side;

vi. The centerline of the water closet exceeds the maximum allowed length of 18 inches;

vii. When in the downward position, the baby changing table obstructs the required 60 inches x 56 inches of clearance around the water closet;

viii. Bridge Street Town Centre fails to maintain the accessible features of the toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

dd) Bridge Street Town Centre provides a lavatory in the men's restroom for able-bodied individuals, but fails to provide a lavatory for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

i. There fails to be the required clear floor space around the urinal;

    **ii.** The light switch exceeds the maximum allowed height of 48 inches above the finished floor;

    **iii.** The lavatory sink drain pipes are not properly insulated;

    **iv.** The soap dispensers require the use of two-hand operation and tight grasping, twisting and/or pinching of the wrist;

    **v.** The lavatory sink fails to stay on for at least 10 seconds;

    **vi.** Bridge Street Town Centre fails to maintain the accessible features of the lavatory that are required to be readily accessible to and usable by individuals with disabilities;

## FAMILY RESTROOM NEAR H&M

**ee)** Bridge Street Town Centre provides a toilet room for able-bodied individuals, but fails to provide a toilet room for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

i. There is no signage displaying the International Symbol of Accessibility designating the interior space of the family toilet room as ADA accessible;

ii. The toilet room door locking mechanism requires the use of tight grasping, twisting, and/or pinching of the wrist;

iii. The lavatory sink fails to stay on for at least 10 seconds;

iv. The bottom reflecting surface of the mirror exceeds the maximum allowed height of 40 inches above the finished floor;

v. The highest operable part on paper towel dispenser exceeds the maximum allowed height of 48 inches;

vi. The highest operable part on the baby changing table exceeds the maximum allowed height of 48 inches;

vii. When in the downward position, the baby changing table obstructs the clearance around the water closet;

viii. The current practice at Bridge Street Town Centre is to locate a trash can within the required clear floor or ground space at the baby changing table;

ix. The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

x. The rear wall grab bar is not properly located 12 inches on the closed side of the water closet and 24 inches on the transfer side;

xi. The centerline of the water closet exceeds the maximum allowed length of 18 inches;

xii. The lavatory sink obstructs the clear floor space around the water closet;

xiii. Bridge Street Town Centre fails to maintain the accessible features of the lavatory that are required

to be readily accessible to and usable by individuals with disabilities;

## MEN'S RESTROOM NEAR MOUNTAIN HIGH OUTFITTERS

ff) There is overhead informational signage informing and directing able-bodied individuals to the restrooms, but there is not overhead informational signage displaying the International Symbol of Accessibility and informing and directing non-able-bodied individuals to an ADA accessible restroom;

gg) There is no signage displaying the International Symbol of Accessibility designating the interior space of the men's restroom as ADA accessible;

hh) Bridge Street Town Centre provides a toilet compartment in the men's restroom for able-bodied individuals, but fails to provide a toilet compartment for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

i. The toilet compartment door fails to be self-closing;

ii. There are not door pulls located on both sides;

iii. The toilet compartment door locking mechanism requires tight grasping, twisting, and/or pinching of the wrist;

iv. The rear wall grab bar is not properly located 12 inches on the closed side of the water closet and 24 inches on the transfer side;

v. The centerline of the water closet exceeds the maximum allowed length of 18 inches;

vi. Bridge Street Town Centre fails to maintain the accessible features of the toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

ii) Bridge Street Town Centre provides a lavatory in the men's restroom for able-bodied individuals, but fails to provide a

lavatory for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

    **i.** There is insufficient clear floor space around the urinal;

    **ii.** The soap dispensers require the use of two-hand operation and tight grasping, twisting and/or pinching of the wrist;

    **iii.** The lavatory sink fails to remain on for the required 10 seconds;

    **iv.** The highest operable part of the paper towel dispenser exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor or ground;

    **v.** Bridge Street Town Centre fails to maintain the accessible features of the lavatory that are required to be readily accessible to and usable by individuals with disabilities;

**<u>COMMON AREAS</u>**

jj) Bridge Street Town Centre provides outdoor seating benches for able-bodied individuals, but fails to provide outdoor seating benches for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

  i. The outdoor seating benches provide arm rests that prohibit individuals with disabilities from being afforded the opportunity to transfer onto the bench from the short axis of the bench;

  ii. Bridge Street Town Centre fails to provide an outdoor seating bench that conforms to the ADA Standards for Accessible Design;

  iii. Bridge Street Town Centre fails to maintain the accessible features of the outdoor seating benches that are required to be readily accessible to and usable by individuals with disabilities;

kk) Bridge Street Town Centre provides lounge seating for able-bodied individuals but fails to provides lounge seating non-

able-bodied individuals, which includes but is not limited to the following failures of Defendants:

    **i.** There is no ADA accessible lounge seating that measures the minimum required length of 42 inches long minimum.

    **ii.** There is no ADA accessible lounge seating that measures the required height of 17-19 inches above the finished floor.

    **iii.** There is no ADA accessible lounge seating that is 20 inches deep minimum and 24 inches deep maximum.

    **iv.** The facility fails to provide lounge seating with the required clear floor or ground space at the short axis of the bench which prohibits individuals with disabilities the opportunity to transfer onto the bench;

    **v.** The facility fails to maintain the accessible features of the lounge seating that are required to

be readily accessible to and usable by individuals

with disabilities;

## ATM MACHINES NEAR SECURITY OFFICE

ll)   Bridge Street Town Centre provides an ATM machine for

able-bodied individuals, but fails to provide at least one

ADA accessible ATM machine for non-able-bodied

individuals, which includes but is not limited to the

following failures of Defendants:

   **i.** The highest operable parts on the ATM machines

   exceeds the maximum allowed height of 48 inches

   above the finished floor;

   **ii.** The ATM machines fail to provide the same level

   of privacy to disabled individuals as to level of

   privacy that is offered to non-disabled individuals

   which includes but is not limited to individuals

   with disabilities cannot effectively block the ATM

   screen with their bodies;

## ACCESSIBLE ROUTE NEAR THE LAKE

mm)   Bridge Street Town Centre provides a route from the area near the lake to the shopping areas for able-bodied individuals, but fails to provide an ADA accessible route from the area near the lake to the shopping areas for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

   i. The walking surface on the accessible route from the area near the lake to the shopping areas has a running slope and cross slope that are not to ADA compliance;

   ii. The walking surface is not properly maintained to be usable by individuals with disabilities;

nn) Bridge Street Town Centre provides stairs on the route from the area near the lake to the shopping areas for able-bodied individuals but fails to provide ADA accessible stairs on the route from the area near the lake to the shopping areas for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

**i.** The handrails serving the stairs provide squared cross sections that fail to comply with the ADA standards for accessible design.

**ii.** The gripping surface on the handrail including the surface adjacent to the handrail fails to be free of sharp or abrasive elements with round edges.

**iii.** The facility fails to maintain the accessible features of the stairs that are required to be readily accessible to and usable by individuals with disabilities;

## CAROUSEL SALES/SERVICE COUNTER

**oo)** Bridge Street Town Centre provides a sales/service counter for able-bodied individuals but fails to provides a sales/service counter for non-able-bodied individuals, which includes but is not limited to the following failures of Defendants:

**A.** The sales/service counter fails to provide a minimum of 36 inches of clear counter surface for

individuals with disabilities to be afforded the opportunity to make a parallel approach to the counter;

    i. There is no 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    ii. There is no clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing sales/service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be afforded the opportunity to make a forward approach to the counter;

    i. There is no 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

D. There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches

maximum above the finished floor that allows for the required knee and toe clearance;

**E.** The current practice at this facility is to place signs within the required clear counter surface;

**F.** Bridge Street Town Centre fails to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

21. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

22. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. §12205.

23. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and usable by, individuals with disabilities to the

extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendants to modify its policies, practices, and procedures, to provide equal use of its facilities, services and benefits to disabled individuals.

## COUNT TWO
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
### 42 U.S.C. § 12182(b)(2)(A)(ii)
### *(Practices, procedures, and policies denying equal benefits)*

## ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers

24.  Plaintiff re-alleges paragraphs 1-23 above.

25.  The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1) (emphasis added).

26.  The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii)-(iii); 28 C.F.R. §

36.202(b)-(c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

27. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective

rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

28. To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

29. By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually

encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

30.  For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. §

12182(b)(2)(A)(ii). The Eleventh Circuit held in <u>Rendon v.</u>

<u>Valleycrest Prod., Ltd.</u> 294 F.3d 1279, (11th Cir. 2002) that:

> *"A reading of the plain and unambiguous
> statutory language at issue reveals that the
> definition of discrimination provided in Title
> III covers both <u>tangible barriers</u> (emphasis
> added), that is, physical and architectural
> barriers that would prevent a disabled
> person from entering an accommodation's
> facilities and accessing its goods, services
> and privileges, see 42 U.S.C. §
> 12182(b)(2)(A)(iv), and <u>intangible barriers</u>
> (emphasis added), such as eligibility
> requirements and screening rules or
> discriminatory policies and procedures that
> restrict a disabled person's ability to enjoy
> the defendant entity's goods, services and
> privileges."*

## Defendants' Failed Practices and Lack of Policies Are Discriminatory

**31.** Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination

includes:

> *"a failure to make reasonable modifications in
> policies, practices, or procedures, when such
> modifications are necessary to afford such
> goods, services, facilities, privileges,
> advantages, or accommodations to
> individuals with disabilities, unless the
> entity can demonstrate that making such
> modifications would fundamentally alter the*

> *nature of such goods, services, facilities,*
> *privileges, advantages, or accommodations.*"

32.  Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled.

33.  As detailed below, Defendants have failed to make reasonable modifications in its policies, practices, and procedures that are necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendants denied services, segregated or otherwise treated Plaintiff differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendants have discriminated against Plaintiff. Defendants will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

34.  Defendants either have no policies, practices, and procedures

to remove architectural barriers or else does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendants have failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

35. Defendants' use of its shopping mall, and its practices at the shopping mall, literally creates barriers and in so doing deny Plaintiff the full and equal enjoyment of the goods and services at Bridge Street Town Centre. Those practices include:

   a) Defendant IMI Huntsville, LLC, makes its shopping center inaccessible for use by the disabled by failing to have any policies, practices, or procedures on ensuring that its tenants facilities are maintained to compliance with ADA, title III, so that Mr. Smith and others similarly situated are afforded the same opportunity to use the Defendants' facilities in the same manner as individuals without disabilities;

   b) Defendant IMI Huntsville, LLC, makes its shopping center inaccessible for use by the disabled by failing to

have any policies, practices, or procedures on ensuring that its management company operates and maintains the shopping center to compliance with ADA, title III, so that Mr. Smith and others similarly situated are afforded the same opportunity to use the Defendants' facilities in the same manner as individuals without disabilities;

c) Defendants' fail to provide ADA accessible parking with connecting accessible routes to the establishment entrances from its parking lots, which means that Plaintiff is forced to depend on assistance from a third party to get into the same areas of the shopping center as non-disabled, whereas non-disabled conveniently park anywhere in the parking lot to access the shopping center;

d) Defendant makes its parking structures inaccessible for use by the disabled by providing a parking structure that fails to conform to the ADA Standards for Accessible Design, which means that Plaintiff is required to drive

all around the shopping center using trial and error to locate an accessible parking space as well as rely on a third party to travel with Mr. Smith for assistance, whereas non-disabled individuals so that they enjoy among other benefits, conveniently park anywhere in the parking structure to access the shopping center;

e) Defendant makes sales/service counters throughout its establishment inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface, which means Plaintiff cannot fully and equally use the sales/service counters to transact business throughout the shopping mall in the same way the non-disabled do, because the non-disabled have counters they can use independently to transact business, discuss services with employees, among other benefits and services;

f) Defendant makes self-service counters throughout its establishment inaccessible for use by the disabled by failing to provide either a parallel or a forward approach

to the counters with the required clear counter surface, which means Plaintiff cannot fully and equally use the self-service counters to receive service throughout the shopping center in the same way the non-disabled do, because the non-disabled have counters they can use independently to receive services, and retrieve items at the counter's independently;

g) Defendants fail to provide ADA accessible parking with connecting accessible routes to the shopping mall from its parking structures, which means that Mr. Smith is forced to depend on assistance from a third party to get into the shopping mall, whereas non-disabled conveniently access the establishment from the parking structures;

h) Defendants fail to provide an accessible route to and throughout all the areas that are usable by individuals without disabilities, which means Mr. Smith is outright excluded from the "opportunity" to access all of the same facilities and services that able-bodied individuals are

able access and enjoy the shopping experience at Bridge Street Town Center;

i) Defendant makes its entire shopping experience inaccessible for use by disabled individuals by failing to provide any level of accessibility whatsoever so that disabled individuals are outright excluded from those same experiences that non-disabled individuals have at Bridge Street Town Center;

j) Defendants make its toilet facilities inaccessible for use by the disabled by failing to maintain any ADA accessible elements within the restrooms so that Plaintiff is afforded the opportunity to independently use the restroom, or clean up, or move into and throughout the restroom, whereas non-disabled individuals are able to independently use the restrooms;

k) Defendant's seating arrangements are designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is

afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to stand or sit in their wheelchairs, or are outright excluded from the "opportunity" to sit and lounge anywhere else that able-bodied individuals are able to sit and lounge while shopping at Bridge Street Town Center;

l) Defendants' practices are conducted without regard to disabled individuals;

m) Defendants' practice is to only make modifications to practices and policies and repairs to barriers upon the demand of the disabled.

36. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

37. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes,

Defendants' existing practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by the disabled.

38. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have no policies, practices, and procedures or else it failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its shopping mall as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Bridge Street Town Centre, as described above in detail.

39. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

40. To date, the Defendants' discriminating policies, practices,

and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

41. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiff hereby demands that Defendants both create and adopt a corporate practice and policy that Defendants (1) will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are permanently removed from Defendants' shopping mall consistent with the ADA; (2) Defendants will provide the disabled, including those with mobility limitations full and equal use and enjoyment of Bridge Street Town Centre; (3) Bridge Street Town Centre will modify its practice of making ADA Title III architectural barrier remediations only upon demand by the disabled.

42. As pled above IMI Huntsville, LLC, "owns" the real property and its improvements in which Bridge Street Town Centre is

located, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

43. As pled above Bayer Properties, LLC, "operates" the Bridge Street Town Centre, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

44. The ADA is over twenty-five (25) years old. Defendants know they must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

45. By this Complaint, Plaintiff provides sufficient notice of his demands for an alteration in Defendants' policies, practices, and procedures.

46. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by

the Defendants pursuant to 42 U.S.C. § 12205.

47. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin

these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

48. Plaintiff re-alleges paragraphs 1-47 above.

49. 42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

50. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

51. Congress also found that: "*individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory*

*effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals*," 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.*" 42 U.S.C. § 12101(a)(8).

52. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and

comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

53. The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

54. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

55. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various

forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendants' acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

56. To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination*" including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C.

12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

57. For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

58. The keystone for this analysis is Defendants *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with*

*a like experience.* <u>*Spector v.  Norwegian Cruise Line Ltd.,*</u> 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005) See also, <u>*Baughman v.  Walt Disney World Company*</u>, 685 F.3D 1131, 1135 (9th Cir. 2012).

59. Plaintiff John Smith was denied full and equal access to Bridge Street Town Centre shopping mall. Plaintiff specifically and definitely wants to return to the Defendants' shopping mall to enjoy Bridge Street Town Centre's  variety of upscale shops and full-service restaurants, but also because of the beautiful peaceful five-acre lake that's home to ducks, turtles and a variety of freshwater fish species. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals and which Defendants have failed to provide to Plaintiff as follows: Defendants failed to provide an accessible parking structure and accessible route into Bridge Street Town Centre for disabled individuals, which means Mr. Smith cannot park, cannot independently get out of the his car and onto his wheelchair, cannot independently travel from the parking deck into the shopping mall areas, cannot determine if

there is a usable parking space, and must determine by trial and error how they are to park and move into the shopping mall; Defendants failed to provide Mr. Smith that same experience that non-disabled individuals have when at Bridge Street Town Centre; Defendants failed to provide an accessible route to and throughout the lake area for disabled individuals, which means that unlike the non-disabled, the disabled must struggle to get throughout the lake area independently, if they can make it at all; Defendants failed to provide the disabled lounge seating in the outdoor areas of the shopping mall, which the able-bodied are provided; Defendants failed to provide accessible restrooms throughout Bridge Street Town Centre for disabled individuals, which means that, unlike the able-bodied, the disabled are challenged or denied the opportunity to independently use the restrooms, clean up after using the restrooms, move throughout the restrooms, and use the other elements of the restrooms; Defendants failed to maintain the accessible signage throughout Bridge Street Town Centre so that the disabled, unlike the non-disabled, do not even know

what route and what facilities are usable by individuals with disabilities; Defendants' failure to identify by signage what is accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counter in the carousel area, though the able-bodied can fully use and enjoy the sales/service counter in the carousel area; Defendants failed to provide Mr. Smith and other disabled individuals the same opportunity to use ATM machines to retrieve cash and other services provided; Defendants failed to maintain the accessible features of Bridge Street Town Centre that are required to be readily accessible to and usable by Mr. Smith an others similarly situated, such as maintaining the parking structure and restrooms; and all the foregoing failures by Defendants inhibited Plaintiff from having the same experience that non-disabled individuals have

when at Bridge Street Town Centre.

60. In its Preamble to the title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

61. The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs

have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided "inferior seating" and "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

62. Thus, Defendants' "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendants have segregated and separated the disabled from the non-disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50*

Case 5:17-cv-00737-MHH   Document 1   Filed 05/05/17   Page 105 of 115

*(1990), reprinted in 1990 U.S.C.C.A.N. 303, 332)*.

63. Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Bridge Street Town Centre.

64. Defendants' conduct and Defendants' unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendants will continue to treat Plaintiff and others similarly situated unequally.

65. Defendants' failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendants will continue to not maintain the required accessible features at Defendants' facility. 28 C.F.R.§ 36.211(a).

**66.** Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

**67.** Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendants.

**COUNT FOUR**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12183(a)(1)**
***(Failure to design and construct facility for ADA compliance)***

**68.** Plaintiff re-alleges paragraphs 1 – 67 above.

**69.** 42 U.S.C. § 12183(a)(1) provides:

> *[Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.*

70. Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination ... continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." Id. § 12101(a)(5). In its Preamble to the title III regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

71. To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is

intended to enable persons with disabilities "*to get to, enter and use a facility*." H.R. Rep. No. 101- 485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," id., as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is *to ensure that the service offered to persons with disabilities is equal to the service offered to others*." *Id.*

72. As the legislative history makes clear, the ADA is geared to the future-- the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, *while requiring all new construction to be accessible.* H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

73. To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design ("Standards") are

incorporated into the Department of Justice's regulation implementing title III of the ADA, 28 C.F.R. Part 36, Appendix A. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common areas, interior stairways and elevators, restrooms, dressing rooms and sales/service areas.

74. Defendant, IMI Huntsville, LLC, "owns" the real property and its improvements in which Bridge Street Town Centre is located, and is directly involved in the designing and/or construction of the shopping mall in this litigation for first occupancy after January 1993.

75. Defendant, Bayer Properties, LLC, "operates" the Bridge Street Town Centre shopping mall and is directly involved in the designing, constructing, and maintaining of the shopping mall in this litigation for first occupancy after January 1993.

76. Defendants were and are required to design and construct the Bridge Street Town Centre to be "readily accessible to and usable by individuals with disabilities." Defendants violated

the statute by failing to design and construct *its shopping mall to be* readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendants further violated the statute by failing to design and construct their facilities in compliance with the ADA during planned alterations as described throughout this Complaint.

77. According to Defendants' own publicly available information, Defendants chose to design and construct their facilities in a way that is not ADA Title III compliant whatsoever. Defendants literally strategically design, construct and maintain their facilities without any regard to the disabled. Defendants' systematic design of their shopping center fails to afford disabled individuals the same shopping experience that is afforded to individuals without disabilities.

78. To date, the Defendants' discriminating actions continue.

79. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid

by the Defendants pursuant to 42 U.S.C. § 12205.

80. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendants.

**WHEREFORE**, premises considered, John Smith demands judgment against the Defendants on Counts One through Four and requests the following injunctive and declaratory relief:

1. That the Court declare that the property owned and business operated by the Defendants as well as all Defendants' illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2. That the Court enter an order enjoining the Defendants to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and (v) and their implementing regulations, as stated in Count One;

3. That the Court enter an order, in accordance with Count Two, directing the Defendants to modify its policies, practices, and procedures both to remedy the numerous ADA violations

outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendants to make its business practices consistent with ADA Title III in the future;

4. That the Court enter an order directing the Defendants to provide Plaintiff full and equal access both to the Bridge Street Town Centre experience and to the use of the Bridge Street Town Centre facilities, and further order Defendants to maintain the required accessible features at the shopping mall so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5. That the Court enter an Order directing the Defendants to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

6. That the Court enjoin Defendants to remediate the Bridge Street Town Centre shopping mall to the proper level of accessibility required for the design and construction of the

facilities for first occupancy, as stated in Count Four;

7. That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff; and

8. That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 5th Day of May 2017.

/s/ *Alan H. Polson*
**ALAN H. POLSON**
**BPR # AL-7346R47N**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.356.5314 p
334.819.4032 f
AHP@ADA-Firm.com
*Attorney for the Plaintiff*

/s/ *L. Landis Sexton*
**L. Landis Sexton**
**BPR # AL-5057N71L**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.819.4030 p
334.819.4032 f
LLS@ADA-Firm.com
*Attorney for the Plaintiff*

*/s/ Tracy G. BirdSong*
    **Tracy G. BirdSong**
    **BPR # AL-2170D64T**
    The ADA Group LLC
    4001 Carmichael Road, Suite 570
    Montgomery, Alabama 36116
    334.819.4030 p
    334.819.4032 f
    TGB@ADA-Firm.com
    *Attorney for the Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 5th day of May, 2017 to the following:


IMI HUNTSVILLE, LLC
c/o CSC Lawyers Incorporating SVC, Inc.
attn: Registered Agent
150 South Perry Street
Montgomery, AL, 36104

BAYER PROPERTIES, LLC
c/o C T Corporation System
attn: Registered Agent
2 North Jackson St., Suite 605
Montgomery, AL, 36104


/s/ *Alan H. Polson*
**ALAN H. POLSON**
**BPR # AL-7346R47N**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.356.5314 p
334.819.4032 f
AHP@ADA-Firm.com
*Attorney for the Plaintiff*